IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES JOE JACKSON<br>　Plaintiff,<br><br>v.<br><br>DALLAS COUNTY, TEXAS<br><br>　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:25-cv-01369-X<br><br><br><br>JURY DEMANDED |

# FIRST AMENDED COMPLAINT

Charles Joe Jackson files this civil action seeking redress for violations of his constitutional rights. He was unlawfully incarcerated in the Dallas County jail for roughly eight (8) days after his lawful release date.

# PRELIMINARY STATEMENT

1. "Any time a person spends even one more day in jail than required by law is unacceptable."

   - Dallas County Judge Clay Jenkins

2. Every week, pursuant to plea agreements or following convictions at trial, hundreds of inmates in the Dallas County Jail are sentenced to probation, county jail time, or imprisonment in the Texas Department of Criminal Justice. For years, Dallas County has systematically detained inmates past their legally mandated release dates.

3. The Dallas County clerks' offices have a duty to process the orders of the trial courts, prepare judgments for signature, and send the proper paperwork to the Dallas County Sheriff's Office in a timely manner.

4. The Dallas County Sheriff's Office has a duty under state law and federal constitutional mandates to quickly and properly process judgments issued by Dallas County courts. Doing so may include releasing an inmate who has already served the requisite amount of jail time according to their sentence, releasing them from custody to probation, or processing their judgments and sending these judgements with the appropriate corresponding paperwork to the Texas Department of Criminal Justice (hereinafter "TDCJ") so that they may be transported from the Dallas County Jail to the care and custody of TDCJ or otherwise released.

5. For years, Dallas County has failed to properly perform these duties, leading hundreds of inmates to be illegally detained in the Dallas County jail for days to months.

6. Dallas County leadership has been aware of these failures for years, at every level, from lower-level employees to supervisors, administrators, and elected officials. Despite their actual knowledge of the recurrent and systemic problems surrounding timely release of inmates, Dallas County has failed to implement proper training, practices, customs, and procedures to prevent this illegal and unjust detention.

7. This case challenges Dallas County in relation to the Dallas County District Clerk's Office, the Dallas County Sheriff's Office, other parts of the Dallas County bureaucracy, and Dallas County's political and professional leadership and management, and its policies, practices, and customs which directly violate the Fourth, Eighth, and Fourteenth Amendments, as well as other federal and state laws. Pursuant to Dallas County policies, practices, and customs, Dallas County employees unlawfully incarcerated Plaintiffs beyond their lawful release date, directly violating Plaintiffs' constitutional due process rights under the Fourteenth Amendment, the Fourth Amendment right against unlawful search and seizure, the Eighth Amendment right against cruel and unusual punishment..

8. Plaintiffs set forth below a general summary of the factual allegations. These allegations are not intended to be exhaustive, detailed, or presented in strict chronological order. Rather, they intend to provide Defendant fair and sufficient notice of the general nature and substance of Plaintiffs' claims, and to establish that such claims are facially plausible.

9. Whenever Plaintiffs plead factual allegations "upon information and belief," Plaintiffs are pleading that the specified factual contentions have or will likely have evidentiary support after a reasonable opportunity to conduct further investigation and/or discovery.

10. Plaintiffs need not assert specific constitutional claims in this pleading but rather must merely plead facts that give rise to constitutional claims, pursuant to United States Supreme Court authority. Plaintiffs ask the Court to apply the correct legal theories to the facts pled.

## PARTIES

11. Plaintiff Charles Joe Jackson is a natural person and resides in Collin County, Texas.

12. Defendant Dallas County, Texas ("Dallas County" or "the County") can be served with process by serving citation on County Judge Clay Jenkins at 500 Elm Street, Suite 7000, Dallas, TX 75202, or wherever he may be found.

13. Dallas County acted, or failed to act, through its employees, agents, representatives, jailers, and/or chief policymakers, all of whom were acting under color of state law at all relevant times, and is liable for such actions or failures to act to the extent allowed by law (including but not necessarily limited to law applicable to claims pursuant to 42 U.S.C. § 1983). Plaintiff is not required to allege the identity of County's chief policymaker in his complaint. However, to the extent necessary, Plaintiff alleges that the County may have delegated relevant policymaking authority to one or more individuals, including but not necessarily limited to the Dallas County District Clerk and/or the Dallas County Sheriff. The County's policies,

practices, and/or customs were the moving forces which caused the constitutional violations and resulting damages referenced in this pleading.

## JURY DEMAND

14. Plaintiff demands a trial by jury.

## JURISDICTION AND VENUE

15. This Court has original subject matter jurisdiction over this lawsuit under 28 U.S.C. §§ 1331 and 1343(a)(4), because this suit presents a federal question and seeks relief pursuant to federal statute(s) that provide for the protection of civil rights. This suit arises under 42 U.S.C. § 1983 and other federal statutes. This Court also has personal jurisdiction over the County as a Texas County.

16. Venue is proper in the Dallas Division of the Northern District of Texas, pursuant to 28 U.S.C. § 1391(b)(2), because all acts and/or omissions alleged herein occurred in this District. Dallas County is in the Dallas Division of the United States District Court for the Northern District of Texas.

## FACTUAL ALLEGATIONS

### Charles Joe Jackson

17. On June 14, 2022, Plaintiff was arrested and charged with the following two criminal offenses, each of which was indicted in Dallas Criminal District Court No. 5:

    i. Manufacturing/Delivery of a Controlled Substance >= 4G < 200G – Cause Number F22-55436-L.

    ii. Unlawful Possession of a Firearm by a Felon – Cause Number F-22-55437-Y.

18. Following his arrest, Plaintiff was held in continuous custody in the Dallas County Jail until his release on June 3, 2023.

19. On May 26, 2023, Plaintiff entered into a plea agreement with the State of Texas.

20. Plaintiff pleaded guilty to both charges.

21. The Honorable Molly Francis, sitting as a senior judge by assignment in Criminal District Court No. 5 of Dallas County, Texas, accepted Plaintiff's plea agreement and ordered Plaintiff to serve five (5) years of deferred adjudication community supervision in both cases

22. Pursuant to the trial court's orders, Plaintiff should have been released immediately.

23. However, the Dallas County District Clerk did not send the proper paperwork (a "Notice of Disposition") to the Dallas County Jail until June 2, 2023.

24. As a direct result, Plaintiff was not released until June 3, 2023.

25. Dallas County illegally detained plaintiff for eight (8) days.

### A Long-Standing Pattern of Unlawful Overdetention by Dallas County

26. The failure to properly release Plaintiff is not an isolated incident, nor was it the result of a negligent omission by just one individual, rather it is evidence of a pattern and policies, practices, and customs repeatedly implemented by Dallas County.

27. During this time period, Plaintiff notified multiple jail staff and employees of the Dallas County Sheriff's Office that he was being unlawfully detained.

28. Dallas County has exhibited a pattern of similar overdetention since at least May 2023.

29. On information and belief, multiple inmates were detained in the Dallas County jail past their court-ordered release dates in that time period.

30. A recent survey evaluated sixty-three (63) cases in Criminal District Court No. 4, in Dallas County, Texas.

31. The cases evaluated were legally disposed while the defendant was an inmate in the Dallas County jail, between approximately October 2024 and June 2025.

32. Of the 63 cases, eleven (11) inmates were released 24 to 36 hours past their release dates. This constitutes approximately 17.5% of evaluated cases.

33. Another twelve (12) inmates in the survey were released more than 36 hours past their release dates, constituting 19.0% of evaluated cases.

34. Of the surveyed cases, twenty-three (23) presented for potential overdetention by Dallas County, or approximately 36.5% of evaluated cases.

35. Since at least May of 2023, multiple Dallas County employees and policy makers, at essentially every level of operation, have been informed of ongoing and systemic problems of overdetention in the Dallas County jail.

36. This information has been provided to Dallas County by prosecutors, defense lawyers, detained inmates, the family and friends of detained inmates, and media outlets.

37. While some of the problems related to the well-documented rollout of the new "Odyssey" courts management system in May of 2023, the basic problem of continued overdetention of inmates has persisted since that time and to the present day.

38. On July 20, 2023, the Dallas Morning News reported that "[a]ccording to the county's June [2023] jail data, inmates who have been court-ordered to be released wait an average of six days longer to be released than in April [2023]."[1]

---

[1] Peterson, Josephine, <u>Dallas County's Jail Population Swells as Technology Troubles Persist</u>, The Dallas Morning News (July 20, 2023, 5:30 AM). https://www.dallasnews.com/news/crime/2023/07/20/dallas-countys-jail-population-swells-as-technology-troubles-persist/.

**Plaintiff's Original Complaint**                                6

39. The same article mentions that "Criminal District Judge J.J. Koch said in an interview last week that he had someone who took a plea, but had to wait a week to be released due to the new system."[2]

40. By the end of May 2023, every relevant Dallas County policy maker, including the elected County Commissioners, the Sheriff, the elected District Clerk, the elected County Clerk, the County Administrator, the Dallas County Criminal Justice Department, and their respective staffs, was aware of ongoing problems of overdetention in the Dallas County jail.

41. Dallas County commissioners have made numerous statements indicating that issues related to the jail population (and jail overcrowding generally) are of immense importance and that many steps have been taken to analyze and address these issues.

42. Nevertheless, the problem of overdetention has continued to the present day, and the relevant policy makers have been unwilling or unable to fix this problem.

43. Rhyan Harris was illegally detained in the Dallas County jail, as an inmate from February to May of 2023. He did not file a lawsuit against Dallas County because he settled his overdetention claim with Dallas County prior to entering litigation.

44. As with Plaintiffs, Harris's illegal detention was a direct result of the systemic policies, practices, and/or customs of Dallas County. He was illegally detained for one-hundred four (104) days after his legally mandated release date, February 17, 2023, despite making multiple requests to remedy his illegal detention and release him as per the Court's orders.

45. The 204th Judicial District Court in Dallas County was assigned, and thus had jurisdiction over, Harris's case.

---

[2] *Id.*

**Plaintiff's Original Complaint**　　　　　　　　　7

46. Chris McDowell was also illegally detained in the Dallas County jail, as an inmate, during the same time period as Plaintiff. He filed a lawsuit against Dallas County in the Northern District of Texas (Case 3:23-CV-02543-K). Dallas County settled that claim.[3]

47. As with Plaintiff, Mr. McDowell's illegal detention was a direct result of the systemic policies, practices, and/or customs of Dallas County. He was illegally detained for fifty-two (52) days after his legally mandated release date, June 30, 2023, despite making multiple requests (on an almost-daily basis) to jail staff to remedy his illegal detention and release him as per the Court's orders.

48. Dallas County Criminal District Court No. 1 was assigned to, and thus had jurisdiction over, Mr. McDowell's case.

49. Similarly, Glenroy Dillon was also illegally detained during the same time period due to the same systemic failures, policies, practices, and customs of Dallas County that affected Plaintiff. He filed a lawsuit against Dallas County in the Northern District of Texas (Case 3:25-CV-01071-S).[4]

50. Mr. Dillon was illegally detained for seventy-six (76) days after his legally mandated release date, May 4, 2023, despite making multiple requests to jail staff to remedy his illegal detention and release him as per the Court's orders.

51. Dallas County Criminal District Court No. 7 was assigned to, and thus had jurisdiction over, Mr, Dillon's case.

---

[3] For more information on Chris McDowell's case, *see* Martinez, Marina Trahan, Dallas County Paid $160,000 To Two Men Kept in Jail Long After They Served Their Time, Texas Standard (May 10, 2024, 9:30 AM), https://www.texasstandard.org/stories/dallas-county-jail-mcdowell-harris-lawsuit-settlement-texas/.

[4] For more information on Glenroy Dillon's case, *see* McManus, Tracey, Dallas County Faces Another Federal Lawsuit Alleging Illegal Detention in the Jail, The Dallas Morning News (May 28, 2025, 11:33 AM), https://www.dallasnews.com/news/courts/2025/05/28/dallas-county-faces-another-federal-lawsuit-alleging-illegal-detention-in-the-jail/.

52. Melissa Ray Molloy, was also illegally detained due to the systemic policies, practices, and/or customs of Dallas County. She filed a lawsuit against Dallas County in the Northern District of Texas (3:25-cv-01373-E). That suit is still pending.

53. She was illegally detained for twenty-one (21) days after her legally mandated release date, May 24, 2023.

54. The 194th Judicial District Court in Dallas County was assigned to, and thus had jurisdiction over, Ms. Molloy's case.

55. Cynthis Willis was illegally detained from January 13, 2025 to February 28, 2025, due to systemic policies, practices, and/or customs of Dallas County. At this time, she has not filed a lawsuit against Dallas County in her individual capacity.

56. Willis was detained for forty-six (46) days after her legally mandated release date, January 13, 2025.

57. The 292nd Judicial District Court in Dallas County was assigned, and thus had jurisdiction over, Willis's case.

58. Dominique Jackson (no relation to plaintiff) was illegally detained from approximately November 15, 2024, to December 9, 2024, due to systemic policies, practices, and/or customs of Dallas County. At this time, he has not filed a lawsuit against Dallas County in his individual capacity.

59. Dominique Jackson was detained for twenty-four (24) days after his legally mandated release date, November 15, 2024. Dallas County was responsible for at least twenty (20) of those days of overdetention.

60. The Criminal District Court No. 7 in Dallas County was assigned, and thus had jurisdiction over, Dominique Jackson's case.

61. Uriah Clish was illegally detained from July 2, 2025, to July 8, 2025, due to systemic policies, practices, and/or customs of Dallas County. At this time, she has not filed a lawsuit against Dallas County in his individual capacity.

62. Clish was detained for six (6) days after her legally mandated release date, July 2, 2025.

63. The 203rd Judicial District Court in Dallas County was assigned, and thus had jurisdiction over, Clish's case.

64. Each of these incidents arose out of different courts in Dallas County, and different individual Dallas County employees were the involved in the actions and inactions leading to the unlawful overdetentions.

65. Relevant Dallas County employees were under the supervision of individual elected clerks (the Dallas County Clerk and the Dallas County District Clerk, depending on the court) as well as the elected Sheriff.

66. Dallas County exhibited a pattern of reckless indifference towards the constitutional rights of detained inmates.

67. This problem was not isolated to individual employees, but was instead widespread and systemic.

68. Upon information and belief, there are multiple other people who were unlawfully detained during the same time period for the same reasons as Plaintiff.

69. Upon information and belief, the County failed to reprimand and/or take remedial action against any employees or agents as a result of action or inaction related to Plaintiff's overdetention, thus confirming that the policies, practices, and/or customs that led to the overdetention were in fact County de facto policies.

## CAUSE OF ACTION – DEFENDANT'S LIABILITY UNDER FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT DUE PROCESS CLAIMS (42 U.S.C. § 1983)

70. Plaintiff repeats and realleges the above paragraphs as though they were fully set forth herein.

71. The Fourteenth Amendment guarantees that no state may "deprive any person of life, liberty, or property, without due process of law." As such, the government cannot hold an inmate without legal authority as it would deprive an inmate of his liberty without due process of law. Therefore, in accordance with the terms of their sentences, detainees are entitled to the constitutional right of timely release from prison.

72. Overdetention also violates an inmate's Fourth Amendment right against unlawful search and seizure and Eighth Amendment right against cruel and unusual punishment.

73. In this case, there is a pattern and practice of overdetention. The Dallas County jail system has repeatedly held citizens past their release date because Dallas County employees caused release-date errors. Additionally, the errors went uncorrected because Dallas County failed to train its employees to double-check their work for errors, failed to train its employees to supervise other employees and correct those errors, and failed to train its employees to recognize and report instances where a citizen may be being illegally detained past their release date.

74. Supervision and fail-safes are integral components of any bureaucracy, and the failure to supervise or double-check is so obviously likely to result in uncorrected errors—in this case, overdetentions—that the failure to include them in a jail system amounts to deliberate indifference, even without a past pattern of violations.

75. However, in this case there is both a failure to train and supervise and a past pattern of rights violations. Multiple instances of unlawful detention from this time period have been

reported. Indeed, it must be emphasized that they are the same type of violations that the Fifth Circuit has repeatedly decided in favor of plaintiffs in the past two years.

76. Those cases should have put Dallas County on notice that habitual overdetention exposes the County to civil liability. Those cases, as well as (1) the obviousness with which the defendant's insufficient training and supervision are likely to cause overdetention errors and leave errors uncorrected; and (2) the past pattern of similar violations in the Dallas County jail system; all combine to illustrate that Dallas County was deliberately indifferent to the overdetentions which their errors caused.

77. Plaintiff should have been released on May 26, 2023. However, the Dallas County District Clerk did not send the proper paperwork to the Dallas County Jail until June 2, 2023.

78. Dallas County's illegal detention of Plaintiff is the direct and proximate cause of Plaintiff's actual damages and emotional distress, stress, anxiety, and depression.

## **_Cause of Action against Dallas County under 42 U.S.C. § 1983 for Violation of Constitutional Rights_**

79. Dallas County employees and agents acted or failed to act under color of state law at all relevant times. Dallas County's policies, practices, and customs were moving forces behind and caused, were producing causes of, and/or were proximate causes of Plaintiff's damages.

80. The Fifth Circuit Court of Appeals has made it clear that Plaintiff need not allege the identity of chief policymaker(s) at the pleading stage, but need only to plead enough factual matter to permit a reasonable inference of involvement by the relevant County policymakers. Out of an abundance of caution, the County sheriff was Dallas County's relevant chief policymaker over matters at issue in this case. Moreover, in the alternative, the County's jail administrator was the relevant chief policymaker over matters at issue in this case. Finally in the alternative, the County's commissioners' court was the relevant chief policymaker.

**Plaintiff's Original Complaint**                12

81. Dallas County was deliberately indifferent in regard to its policies, practices, and customs developed or used regarding issues addressed in the allegations set forth above, for any facts that are ultimately determined to support episodic act or omission claims. Plaintiff's inclusion of the "deliberate indifference" allegation does not concede or allege that deliberate indifference is a necessary element of a conditions of confinement claim.

## *REMEDIES*

82. For claims brought forth under 42 U.S.C. § 1983, damages will be determined through principles from the common law of torts. Therefore, Plaintiff seeks all remedies and damages available for causes of action asserted in this complaint pursuant to Texas and federal law, including but not necessarily limited to Texas common law applicable to the tort claim for false imprisonment, and all related and/or supporting caselaw. Plaintiff seeks remedies and damages, including, but not limited to, actual damages such as past and future compensation for humiliation, shame, fear, mental anguish, and loss of enjoyment of life. Plaintiff also seeks economic damages for lost wages and/or loss of earning capacity for losing the opportunity to work during the time of his unlawful incarceration. Plaintiff incorporates this remedies section into all sections in this complaint asserting cause(s) of action.

83. In this case, Plaintiff suffered injuries for his humiliation, shame, fright, mental anguish, and loss of enjoyment of life for which he seeks recovery. Plaintiff also seeks economic damages for lost wages and/or loss of earning capacity for losing the opportunity to work during the time of his unlawful incarceration.

## ATTORNEYS' FEES

84. If Plaintiffs prevail in this action, by settlement or otherwise, Plaintiffs are entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

**Plaintiff's Original Complaint**               13

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court award judgment for Plaintiff within the jurisdictional limits of the Court and against Defendant, as legally available and applicable, for all damages referenced above and below in this pleading:

a) actual damages including but not necessarily limited to past and future damages for humiliation, shame, fright, mental anguish, stress, and loss of enjoyment of life suffered by Plaintiff;

b) actual damages including but not necessarily limited to economic damages for lost wages and/or loss of earning capacity for losing the opportunity to work during the time of his unlawful incarceration;

c) reasonable and necessary attorneys' fees through trial and any appeals and other appellate proceedings, pursuant to 42 U.S.C. §§ 1983 and 1988;

d) court costs and all other recoverable costs;

e) prejudgment and postjudgment interest at the highest allowable rates; and

f) all other relief, legal and equitable, general and special, to which Plaintiff is entitled.


Dated: July 23, 2025                     Respectfully submitted:


*/s/ James A. Spangler, Jr.*
James A. Spangler, Jr.
Texas Bar No. 24106454
**SPANGLER LAW PLLC**
1700 Pacific Ave, Suite 2620
Dallas, TX 75201
Telephone: 214-932-3030
jim@spanglerlaw.com


*/s/ Huma T. Yasin*
Huma T. Yasin
Texas Bar No. 24115971

**SPANGLER LAW PLLC**
1700 Pacific Ave, Suite 2620
Dallas, TX 75201
Telephone: 214-932-3030
hyasin@spanglerlaw.com

*/s/ David A. Burns*
David A. Burns
Texas Bar No. 24126298
**SPANGLER LAW PLLC**
1700 Pacific Ave, Suite 2620
Dallas, TX 75201
Telephone: 214-932-3030
dburns@spanglerlaw.com

ATTORNEYS FOR PLAINTIFF